DECISION
This civil action is comprised of two miscellaneous petitions wherein the City of Central Falls (City) moves this Court to vacate an arbitration award, and the Rhode Island Council `94, A.F.S.C.M.E. (Union) and Rafael Torres (Torres), move this Court to confirm the same arbitration award. This Court possesses jurisdiction pursuant to G.L. 1956 § 28-9-1 et seq.
 FACTS AND TRAVEL
In American Arbitration Association case number 11-390-00182-98, entitled In the Matter of the Arbitration between City ofCentral Falls and Rhode Island Council 94, AFSCME, June 22, 1998 (decision), the arbitrator, John B. Cochran, Esquire (Cochran), made the following factual findings and conclusions of law.[1]
Torres was an employee of the City for approximately ten years and held the position of laborer in the Department of Public Works (DPW). Torres had work hours from 7:00 a.m. until 3:30 p.m., scheduled Monday through Friday, with occasional overtime assigned on a rotating basis. Additionally, for approximately the same ten-year period, Torres was an employee of Lincoln Park Racetrack (Lincoln Park) and held the position of parking valet. Torres had work hours from 5:30 p.m. until 12:00 a.m., scheduled on Tuesday, Thursday, and Friday. The duties assigned to Torres by Lincoln Park were less strenuous than the duties required by the City.
On March 24, 1997, Peter Granieri (Granieri), the Director of the DPW, provided written notice to Torres stating that Torres had the highest record of undocumented sick leave absences in the DPW and that the City required him to document his future absences due to illness with a doctor's note. On December 18, 19, and 23, 1997, Torres notified the DPW that he was ill and would be utilizing his sick leave time. On December 23, 1997, a physician, Dr. Nayer, examined Torres, diagnosed him with bronchitis, and provided a written note stating that Torres should not return to work until December 26, 1997. Cochran found that Torres was "legitimately sick" on these days. However, Torres did work at Lincoln Park on the nights of December 18, 19, and 23, 1997, despite his illness. Lincoln Park did not provide Torres with sick leave benefits.
The record contains no evidence that the City had a written policy prohibiting employees from working a second job during hours the employee was not scheduled to work for the City. Moreover, Cochran found that the City did not have a written policy prohibiting an employee from working a second job on the same day the employee was absent on sick leave from his or her primary job with the City. Nevertheless, on January 7, 1998, the City terminated the employment of Torres. The City reasoned that Torres had a duty to rest and recuperate from the illness instead of working for Lincoln Park at night during the same days he received sick leave benefits from the City. On January 8, 1998, the Union filed a grievance regarding this termination. On January 21, 1998, after a hearing, the Mayor of the City denied the grievance.
On April 17, 1998, the parties presented this grievance to Cochran for arbitration. The parties stipulated to the following charge: whether the City discharged Torres without just cause, and if yes, then what is the appropriate remedy. Cochran determined that the pertinent contractual provisions as provided by the "Agreement between R.I. Council 94, AFSCME, AFL-CIO Local 1627 and The City of Central Falls, Rhode Island" (Agreement) are contained in Article 14, entitled Sick Leave, paragraph 14.1, which states, in part, that "[s]ick leave with pay shall be granted to employees covered by this agreement. . . ." and Article 36, entitled Disciplinary Action, paragraph 36.1, which states, in part, that "[d]isciplinary action may be imposed upon an employee only for just cause." Cochran also restated the issue as "whether the City had just cause to terminate an employee because he called in sick to his primary job with the City on days that he worked at a second job outside of the hours he was scheduled to work for the City."
 STANDARD OF REVIEW
This Court's "authority to review the merits of an arbitration award is very limited." Rhode Island Brotherhood ofCorrectional Officers v. State Department of Corrections,707 A.2d 1229, 1234 (RI. 1998) (citations omitted). The Court must determine "whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the parties." Town of Coventry v. Turco, 574 A.2d at 146 (quoting State v. National Association of Government EmployeesLocal No. 79, 544 A.2d 117, 119 (R.I. 1988) (citing Rhode IslandCouncil 94 v. State, 456 A.2d 771, 773 (R.I. 1983)). The general rule is that ""[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld."' Rhode Island Brotherhood of Correctional Officers v.State Department of Corrections, 707 A.2d at 1234 (quoting Townof Coventry v. Turco, 574 A.2d at 146). The Court will uphold the arbitration award "as long as an arbitrator's award "draws its essence' from the contract and is based upon a "passably plausible' interpretation of the contract. . . ." Town ofCoventry v. Turco, 574 A.2d at 146 (quoting Jacinto v. Egan,120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)) (citations omitted). "However, notwithstanding this circumscribed standard of review, an arbitration award will be vacated . . ., if the arbitrator has otherwise exceeded his or her powers." Rhode Island Brotherhoodof Correctional Officers v. State Department of Corrections, 707 A.2d at 1234 (citations omitted). Additionally, the Court will vacate the arbitration award if the arbitrator "manifestly disregarded a contractual provision or reached an irrational result . . ." Id. In making these determinations, the Court "may not reconsider the merits of an award despite allegations that it rests upon errors of fact or on a misinterpretation of the contract." Rhode Island Council 94, AFSCME, AFL-CIO v. State,714 A.2d 584, 588 (R.I. 1998) (citation omitted). The proper role of this Court "is to determine whether the arbitrator has rationally resolved the grievance by considering the contract between the parties and the circumstances out of which come the so-called common law of shop." Id. at 589 (citation omitted).
 PETITION TO CONFIRM THE ARBITRATION AWARD IS GRANTED
From the testimony presented at the arbitration hearing, Cochran first determined that Torres was "legitimately sick" on the dates in question, and, therefore, he "did not fraudulently misrepresent his medical condition to obtain contractual sick leave benefits." Moreover, Cochran determined that "it would be inconsistent with the established notion of just cause to uphold Torres's (sic) termination because he had no notice that his conduct was improper or that he could be discipline (sic) for it." Cochran also determined that the record did not contain sufficient evidence to conclude that "Torres exacerbated his medical condition or retarded his recovery to the point that his conduct was inherently inconsistent with the City's interests and his employment relationship with the City, his conduct did not warrant termination without some prior notice that his conduct was unacceptable." Cochran concluded that the "City did not have just cause to terminate Torres because he worked a second job at Lincoln Park outside of his normal hours of work with the City after reporting sick for his job with the City." Cochran ordered that the "City shall reinstate Torres and make him whole for any wages and contract benefits he lost because it terminated him."
After thorough review of the decision and consideration of the memoranda submitted by the parties, this Court reluctantly confirms the arbitration award issued by Cochran. This Court finds that Cochran's arbitration award "draws its essence" from the Agreement and is based upon a "passably plausible" interpretation of the Agreement. The City has not presented sufficient evidence for this Court to find either that Cochran "manifestly disregarded" the Agreement or that Cochran reached an irrational result. Therefore, the Union's Petition to Confirm the Arbitrator's Award is granted, and the City's Petition to Vacate the Arbitrator's Award is denied. This Court notes that the determination above solely results from the limited scope of review of the matter permitted by our statutes. If this Court was able to exercise greater independent judgment over the facts presented by the parties and reach the merits of the issues, then this Court would have vacated the arbitration award.
Counsel shall prepare and submit an appropriate order for entry of judgment by this Court within ten days.
[1] The factual findings and conclusions of law made by Cochran are set out in detail in the written decision.